*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1597**

Wilfrid Hines, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed June 15, 2026**
**Affirmed**
**Schmidt, Judge**

Hennepin County District Court
File No. 27-CV-24-16508

Joshua S. London, London Defense, P.L.L.C., Minneapolis, Minnesota (for appellant)

Keith Ellison, Attorney General, Victoria Bernhagen, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Smith, Tracy M., Presiding Judge; Schmidt, Judge; and

Beane, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

Appellant Wilfred Hines challenges the district court's order denying reinstatement

of his driver's license following civil implied-consent proceedings. We affirm.

FACTS

The following facts were elicited at an implied-consent hearing. Two anonymous people called 911 reporting that a driver in a white pickup was slumped over and not moving after a traffic light turned green.

While officers searched for the white pickup truck, they received computer-aided dispatch (CAD) notes that described the driver as a white male with a beard and goatee and provided a license plate number for the truck. Officers located a white truck in the reported area and noticed that the license plate number on the truck was one digit off from the number reported in CAD. Officers stopped the vehicle.

Once stopped, the driver—a white man with a beard—exited the truck. An officer noticed that the driver, later identified as Hines, was having a "hard time with his balance" and was holding onto the truck. Officers smelled alcohol on Hines and observed that his eyes were bloodshot and watery. From outside the truck, an officer observed what appeared to be alcohol containers within the driver's reach behind the middle console area. Hines agreed to take a breath test, which revealed that his alcohol concentration was over the legal limit. The officers arrested Hines on suspicion of driving while intoxicated.

Respondent Commissioner of Public Safety revoked Hines's driver's license pursuant to the implied-consent statute. Minn. Stat. § 169A.52 (2024). Hines petitioned the district court to reinstate his driver's license, arguing that police did not have reasonable suspicion to stop him.

The district court held an evidentiary hearing at which it heard testimony from the responding officers, both of whom testified that "slumpers" present a danger to other

drivers because the slumped driver may be impaired, tired, or having a medical emergency. The district court also received several exhibits into evidence, including the squad-camera footage from the stop, the two 911-call recordings, and the CAD notes.

The district court denied Hines' petition. The court found that the officers' testimony was credible and corroborated by the CAD notes and squad-camera footage. The court determined the officers had reasonable, articulable suspicion to stop Hines.

This appeal follows.

## DECISION

Hines argues that the district court erred in determining that law enforcement had reasonable, articulable suspicion to stop him because the 911 callers were anonymous and law enforcement did not corroborate the caller-provided information. We disagree.

Unreasonable searches and seizures are prohibited. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Law enforcement must have reasonable, articulable suspicion of a traffic violation to justify stopping a vehicle. *Jobe v. Comm'r of Pub. Safety*, 609 N.W.2d 919, 921 (Minn. App. 2000). We review questions about the legality of a traffic stop de novo. *Harrison v. Comm'r of Pub. Safety*, 781 N.W.2d 918, 920 (Minn. App. 2010).

Hines challenges law enforcement's reliance on the 911 callers as providing reasonable, articulable suspicion for justifying the stop. Courts analyze several factors when determining whether the information a 911 caller provided is reliable, including the identifiability of the caller and the facts that support the caller's report that a driver has failed to follow the law. *See Rose v. Comm'r of Pub. Safety*, 637 N.W.2d 326, 328 (Minn. App. 2001), *rev. denied* (Minn. Mar. 19, 2002). We may also consider the 911 caller's

3

knowledge of the conduct, whether the report is made contemporaneously, and use of the 911 emergency system because it has features that allow for identifying and tracing callers. *See Navarette v. California*, 572 U.S. 393, 399-401 (2014).

Hines argues that the 911 callers were unreliable because they were not "identified" during the call. Caselaw does not impose such a requirement. Instead, caselaw requires that the caller be "identifiable," meaning that police could eventually identify the caller. *Rose*, 637 N.W.2d at 328. Here, the callers used the 911 emergency system to report a "slumper." As such, the callers were identifiable.

Our review of the other relevant factors leads us to the conclusion that the district court appropriately denied Hines's petition. The callers provided contemporaneous information, which indicated that they were eyewitnesses to the "slumping" conduct at green lights. *See Navarette*, 572 U.S. at 399. The callers also contemporaneously reported the direction Hines was traveling in the white pickup truck. *See id.*

After receiving the information, officers attempted to locate the white pickup truck in the reported area. Officers also received CAD notes that provided additional information, including a license plate number. Once officers located a white pickup truck in the area reported by the callers and confirmed the license plate number was similar to the information received in the CAD notes, officers had reasonable, articulable suspicion to stop the truck and investigate further. Thus, the district court did not err in denying Hines's petition to reinstate his driver's license.

**Affirmed.**